**Sciarra & Catrambone, L.L.C.**
Charles J. Sciarra, Esq. (CS 4519)
Matthew R. Curran, Esq. (MC 4997)
1130 Clifton Avenue, Suite #3
Clifton, New Jersey 07013
Phone: (973) 242-2442
Fax:    (973) 242-3118
Email: csciarra@sciarralaw.com
*Attorney for Plaintiffs*

RECEIVED-CLERK
U.S. DISTRICT COURT

08 JUL 31 A 9:30

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE TROOPER FRATERNAL ASSOCIATION, and ONE NEW JERSEY STATE POLICE TROOPER, IDENTITY WITHHELD,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF NEW JERSEY, STATE OF NEW JERSEY - DIVISION OF STATE POLICE, SUPERINTENDENT OF STATE POLICE,<br><br>Defendants. | Civil Action No.: 08-CV-3820 |

### PLAINTIFFS' BRIEF IN SUPPORT OF THEIR APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF

Of Counsel:
Charles J. Sciarra, Esq. (CS 4519)

On the Brief:
Charles J. Sciarra, Esq. (CS 4519)
Matthew R. Curran, Esq. (MC 4997)

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT..................................................1

STATEMENT OF FACTS.....................................................1

LEGAL ARGUMENT.........................................................1

    POINT I

        PLAINTIFFS RESPECTFULLY REQUEST THAT THE COURT GRANT THE WITHIN APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AS DEFENDANTS SEEK TO VIOLATE THE PLAINTIFF TROOPER'S RIGHT TO PRIVACY............................................................1

            A.    Plaintiffs can demonstrate that they will prevail on the merits as Defendants seek to conduct an Internal Affairs interview of the Plaintiff Trooper regarding a consensual, off-duty sexual encounter in violation of the Trooper's constitutional right to privacy..........................................4

            B.    The Plaintiff Trooper will be irreparably harmed if Defendants are permitted to violate his constitutional right to privacy, while a preliminary injunction will not harm Defendants and same is in the public interest..........................14

    CONCLUSION........................................................15

**PRELIMINARY STATEMENT**

Kindly accept the within brief in support of Plaintiffs' Application for Preliminary Injunctive Relief. Plaintiffs State Trooper Fraternal Association and One New Jersey State Police Trooper, identity withheld (the "Plaintiff Trooper"), have moved for preliminary injunctive relief as it relates to the administrative investigation into a female complainant's allegations of a sexual assault by members of the State Police.

Defendants are conducting their administrative investigation in to this matter even though on or about July 17, 2007 the Middlesex County Prosecutor, Bruce Kaplan, announced that they were closing their file in the subject investigation. The Prosecutor did so without any presentment to a grand jury or any issuance of a criminal complaint. At no time was such a low standard as probable cause found or in any way stipulated to.

Plaintiffs have filed the within application on the basis that Defendants State of New Jersey, State of New Jersey - Division of State Police, and the Superintendent of the State Police (collectively "Defendants") have ordered the Plaintiff Trooper to appear for an administrative interview without any indication as to what questions will be asked other than he will be asked "about [his] conduct on or about December 6 and 7, 2007." Defendants indicated orally to Plaintiff's counsel only that the investigation was into "questionable conduct."

Defendants have not provided any parameters as to the questions they intend to ask Plaintiff Trooper. It is therefore clear Defendants will seek to question Plaintiff about his private, consensual sexual conduct on that evening.

Defendants' intended conduct is a violation of the Plaintiff Trooper's right of privacy. As such, Plaintiffs respectfully request that the Court enter the enclosed Order for Injunctive Relief prohibiting Defendants, until further Order of the Court, from (a) questioning the Plaintiff Trooper regarding his sexual activities, (b) disciplining him for his sexual activities, or (c) disciplining him for failing to answer questions regarding same.

### STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to the Statement of Facts as set forth in their Verified Complaint.

### LEGAL ARGUMENT

### POINT I

**PLAINTIFFS RESPECTFULLY REQUEST THAT THE COURT GRANT THE WITHIN APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AS DEFENDANTS SEEK TO VIOLATE THE PLAINTIFF TROOPER'S RIGHT TO PRIVACY.**

Pursuant to Fed. R. Civ. P. 65.1, "[a]ny party may apply for an order requiring an adverse party to show cause why a preliminary

-2-

injunction should not issue, upon the filing of a verified complaint or verified counterclaim or by affidavit during the pendency of the action." The Rule further provides that the party requesting a preliminary injunction must proffer a good and sufficient reason why this procedure is necessary as opposed to a notice of motion. Ibid.

Further, pursuant to 28 U.S.C.A. §1657, the Court is directed to expedite an action for preliminary injunctive relief "if good cause therefor is shown." "Good cause" is defined as "a right under the Constitution of the United States or a Federal Statute would be maintained in a factual context that indicates that a request for expedited consideration has merit." Ibid.

In Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F. 3d 800, 803 (3d Cir. 1998), the Third Circuit provided the following four factors for consideration when determining an application for preliminary injunctive relief. The four factors are as follows: (a) the likelihood that plaintiff will prevail on the merits at final hearing; (b) the extent to which plaintiff is being irreparably harmed by the conduct complained of; (c) the extent to which defendant will suffer irreparable harm if the preliminary injunction is issued; and (d) the public interest. Here, each factor weighs in favor of granting preliminary injunctive relief to Plaintiffs.

**A.   Plaintiffs can demonstrate that they will prevail on the merits as Defendants seek to conduct an Internal Affairs interview of the Plaintiff Trooper regarding a consensual, off-duty sexual encounter in violation of the Trooper's constitutional right to privacy.**

Plaintiffs can demonstrate a likelihood that they will prevail on the merits at the final hearing. Defendants have expressed their desire to interview the Plaintiff Trooper with regards to a consensual, off-duty sexual encounter. This incident does not have an impact on the Trooper's on-the-job performance and as such this inquiry is in violation of Plaintiffs' constitutional right to privacy.

In <u>Griswold v. Connecticut</u>, 381 U.S. 479 (1965), the United States Supreme Court invalidated a Connecticut law that prohibited the use of drugs or devices of contraception. Citing to the First, Third, Fourth, Fifth and Ninth Amendments, the Court explained that various guarantees provided for in the Bill of Rights create zones of privacy. <u>Griswold</u>, 381 U.S. at 484. In reaching its conclusion to invalidate the law, the Court reasoned:

> Would we allow the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives? The very idea is repulsive to the notions of privacy surrounding the marriage relationship. <u>Id</u>. at 485-486.

In <u>Eisenstadt v. Baird</u>, 405 U.S. 438 (1972), the Court extended the constitutional right to privacy beyond the marital relationship. Therein, the Court invalidated a law that prohibited the distribution of contraceptives to unmarried persons. In

-4-

reaching its holding, the Court provided the following statement, "[i]f the right of privacy means anything, it is the right of the individual married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." 405 U.S. at 453. See Carey v. Population Services Int'l, 431 U.S. 678 (1977)(invalidating a New York law prohibiting the sale or distribution of contraceptive devices to persons under 16 years of age); see also Roe v. Wade, 410 U.S. 113 (1973).

Justice Stevens, in his dissenting opinion in Bowers v. Hardwick, 478 U.S. 186 (1986), summarized the state of the law concerning the right to privacy at the time of Bowers as follows:

> Our prior cases make two propositions abundantly clear. First, the fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice; neither history nor tradition could save a law prohibiting miscegenation from constitutional attack. Second, individual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. Moreover, this protection extends to intimate choices by unmarried as well as married persons. 478 U.S. at 216 (Stevens, J., dissenting).[1]

---

[1] In Lawrence v. Texas, 539 U.S. 558, 577 (2003), the Court overruled the majority's opinion in Bowers. Further, the Court held that Justice Stevens' dissenting opinion should have been controlling in Bowers. Lawrence, 539 U.S. at 577.

Most recently, in Lawrence v. Texas, the Court invalidated a Texas law which criminalized certain sexual acts when engaged in by two members of the same sex. The Court reasoned that the Government could not intrude upon and criminalize the private sexual conduct of two consenting homosexual adults. 539 U.S. at 578. In support for this holding, the Court quoted Casey for the proposition that "[i]t is a promise of the Constitution that there is a realm of personal liberty which the government may not enter." Lawrence, 539 U.S. at 578 (quoting Casey, 431 U.S. at 847).

"The government cannot condition employment on the waiver of a constitutional right." Mindel v. U.S. Civil Service Commission, 312 F. Supp. 485 (N.D. Cal. 1970). With this predicate, federal and state courts have grappled with the issue of how the employer-employee relationship is affected by the constitutional right to privacy. There are several decisions that deal directly with this issue and indicate that a governmental employer is prohibited from violating an employee's right to privacy unless there is a substantial nexus between the employee's conduct and his or her duties.

Both Woodard v. Gallagher, 1992 WL 252279 (Fla. Cir. Ct. 1992) and Morrison v. State Board of Education, 1 Cal. 3d 214 (1969) deal with a government/employer's imposition of disciplinary actions against employees for engaging in homosexual conduct. In Woodard, the Court held that the County Sheriff failed to proffer a strong

and compelling justification for his intrusion into the plaintiff's privacy and the use of the plaintiff's sexuality as a basis to discharge him. 1992 WL 252279, *2. Likewise, in <u>Morrison</u>, the State Board of Education revoked the plaintiff's teaching diplomas because he engaged homosexual sex with a fellow male teacher. The Court held that the Board could not revoke the plaintiff's diplomas in the absence of evidence that his sexual conduct affected his performance or made him unfit to teach. 1 Cal. 3d at 234-236.

Further, Courts have held that employers violated the constitutional rights of Police Officers and other public servants where their employment was terminated because they engaged in cohabitation with unmarried women. In <u>Briggs v. North Muskegon Police Department</u>, 563 F. Supp. 585, 586 (D.C. Mich. 1983), <u>aff'd</u> 746 F. 2d 1475 (1984), the plaintiff, a Police Officer, brought a civil rights suit after the Police Department dismissed him because he was cohabiting with a married woman not his wife. The Court specifically rejected the defendants' argument that the termination was proper because the community would disapprove of the plaintiff's conduct. <u>Briggs</u>, 563 F. Supp. at 590. In support of its holding, the Court stated, "[t]he very purpose of constitutional protection of individual liberties is to prevent such majoritarian coercion", and "[c]onstitutional rights should not depend upon popularity polls or the whims of public opinion." <u>Id</u>. at 590-591.

In <u>Mindel</u>, 312 F. Supp. 485, the post office terminated the employment of a postal clerk when it discovered through an investigation that the clerk lived with a young lady without the benefit of marriage. The Court held that the termination violated the postal clerk's right to privacy. 312 F. Supp. at 487. The Court rejected the government's claim that it rightfully terminated the employee because of his "immoral" conduct. <u>Ibid</u>. Specifically, the Court reasoned that even if the postal clerk's conduct was "immoral", pursuant to his constitutional rights to privacy, he could not be terminated "absent a rational nexus between his conduct and his duties as a postal clerk." <u>Ibid</u>.

As in <u>Mindel</u>, the Court in <u>Drake v. Covington County Bd. Of Ed.</u>, 371 F. Supp. 974, 979 (D.C. Ala. 1974) held that the Board of Education violated its employee's right to privacy when it terminated the unwed, pregnant teacher's employment due to a claim of immorality. <u>Ibid</u>. Further, the Court found that the Board failed to articulate a compelling interest that justified the invasion of the teacher's constitutional right of privacy. <u>Ibid</u>. <u>See also</u> <u>Major v. Hampton</u>, 413 F. Supp. 66 (D.C. Ca. 1976) (Court rejected the government's basis for the termination of an IRS agent for engaging in off-duty, adulterous trysts at his "shack pad" which the employer characterized as immoral as the adverse employment action violated employee's right to privacy, and there was no nexus between the employee's immoral conduct and his duties

as an IRS agent).

Based upon the foregoing case law, it is clear that Plaintiff's constitutional right to privacy is implicated. See Shuman v. City of Philadelphia, 470 F. Supp. 449, 459 (D.C. Pa. 1979) ("a party's private sexual activities are within the 'zone of privacy' protected from unwarranted government intrusion."). Defendants seek to pose questions to the Plaintiff Trooper specifically about intimate details concerning a sexual encounter he had with a twenty-five year old who was also engaging in sexual acts with other individuals on the night in question.

The next inquiry is what degree of scrutiny should the Court engage in where, as here, a constitutional right is implicated. In Via v. Taylor, 224 F. Supp. 2d 753 (D. Del. 2002), a recent District Court opinion within this Circuit, the Court held, "[w]here, as here, a public employee's right to personal, off-duty, intimate associations has been implicated by a government regulation, courts have applied the intermediate scrutiny standard of review." 224 F. Supp. 2d at 760. As in Via, intermediate scrutiny is applicable in the matter at bar.

Under intermediate scrutiny, the regulation must serve an important government interest and be substantially related to that interest. Via, 224 F. Supp. 2d at 760, citing Mississippi University for Women v. Hogan, 458 U.S. 718, 724 (1982). In Via, the employer, the Department of Corrections, terminated a

Corrections Officer for engaging in a sexual relationship with a paroled former inmate in violation of its Code of Conduct which prohibited same.[2] The Court held that the employer's prohibition against Officer contact with former offenders did not withstand intermediate scrutiny. Id. at 761-763. In support of its holding, the Court found that there was no evidence that the relationship had a negative impact on her job performance. Id. at 762.

In the present matter, Defendants are unable to cite to an important government interest. Defendants have stated only that they are investigating "questionable conduct." However, any claim that the Plaintiff Trooper engaged in non-consensual sex has been abandoned by the State. As set forth in the Verified Complaint, the complainant's allegation was rejected outright by the Middlesex County Prosecutor's Office when they closed their file in this matter. In fact, the Prosecutor's Office did not present the matter to the grand jury and no criminal charges have ever been brought against any Trooper.[3] Thus, the State Police are left with an investigation wherein they seek to question and discipline the Plaintiff Trooper for engaging in an off-duty, consensual sexual

---

[2] Unlike the Department of Corrections in Via, the State Police does not have regulations which govern the sexual conduct of its members as it relates to this matter.

[3] At this juncture, the actions of complainant are ripe for a malicious prosecution civil action if the Trooper chooses such a course and the statute has started to run. See Muller Fuel Oil Co. v. Insurance Co. of North America, 95 N.J. Super. 564, 577 (App. Div. 1967).

encounter with a woman who is of age.

Presumably, Defendants are pursuing this investigation based upon their subjective determination that the Plaintiff Trooper engaged in "immoral" conduct when he had group sex with the complainant. Subjective selection of what is immoral, including several males engaging with one female has no bearing on Plaintiff's employment. Defendants are constitutionally prohibited from inquiring and punishing the Trooper for this aspect of his private life as this inquiry has no nexus with his employment as a Trooper.

A case in this Circuit has specifically dealt with the constitution prohibition into the questioning of a Police Officer about his off-duty sex life. In Shuman, 470 F. Supp. 449, a Police Officer was the subject of an Internal Affairs investigation initiated by the mother of his girlfriend. The mother alleged that the Officer engaged in misconduct because he was living with the unmarried girlfriend. Id. at 452. The mother further alleged that she lost all respect for the Department and the Commissioner as a result. Ibid.

Internal Affairs investigators ordered the Police Officer to appear at an IA interview regarding the complaint. Id. at 453. When the inquiry turned to his personal life, the Officer refused to answer the questions. Ibid. Thereafter, the Department terminated the Officer's employment. Id. at 453-454.

The Court specifically addressed the requirement that a Police Department's questions at an Internal Affairs investigation regarding the sexual conduct of its members must have a nexus with the Officer's employment. Specifically, the Court provided as follows:

> [W]e are compelled to conclude that there are many areas of a police officer's private life and sexual behavior which are simply beyond the scope of any reasonable investigation by the Department because of the tenuous relationship between such activity and the officer's performance on the job. In the absence of a showing that a policeman's private, off-duty personal activities have an impact upon his on-the-job performance, we believe that inquiry into those activities violates the constitutionally protected right of privacy. **The Police Department simply cannot have a Carte blanche to investigate all aspects of a police officer's personal life**. Id. at 459-460 (internal citations omitted) (emphasis added).

As in Shuman, the State Police does not have a specific policy that regulates sexual conduct of Troopers as it relates to this matter. As such, the present case is also analogous to Thorne v. City of El Segundo, 726 F. 2d 459 (9th Cir. 1983). In Thorne, the Court held that a prospective Police Officer's right to privacy was violated when the Police Department, as part of its application process, questioned the plaintiff extensively during a polygraph examination about the possibility she had been pregnant and had an abortion. Further, the polygraph examiner questioned the plaintiff about the identity of her sexual partners. 726 F. 2d at 469-470.

The Thorne Court stated as follows:

> The City set no standards, guidelines, definitions or limitations, other than the polygraph examiner's own personal opinion, as to what might be relevant to the job performance in a particular case. When the state's questions directly intrude on the core of a person's constitutionally protected privacy and associational interests, as the questioning of the polygraph examiner did in this case, an unbounded, standardless inquiry, even if founded upon a legitimate state interest, cannot withstand the heightened scrutiny with which we must view the state's action. Id. at 470.

As in Thorne, Defendants seek to conduct an open-ended inquiry into the sex life of its employee. They have not provided any citation to rules or regulations which would warrant such an inquiry. The Trooper has not been provided with any notice as to how his sexual conduct violates the State Police's Standard Operating Procedures. Without any standards or guidance from their own rules and regulations, Defendants should be prohibited from engaging in such an open ended inquiry.[4]

Based upon the foregoing, Plaintiffs respectfully submit that they have demonstrated a likelihood of success on the merits regarding their claim.

---

[4] Further, as set forth supra, Defendants have failed to express, in any way, how the conduct the Trooper engaged in on the date in question was job related.

**B.     The Plaintiff Trooper will be irreparably harmed if Defendants are permitted to violate his constitutional right to privacy, while a preliminary injunction will not harm Defendants and same is in the public interest.**

Plaintiffs also satisfy the three additional requirements for injunctive relief. First, as set forth above, Defendants are constitutionally prohibited from questioning the Plaintiff Trooper about his off-duty sexual activities. See Shuman, 470 F. Supp. at 459-460. As such, the Plaintiff Trooper's constitutional rights will be violated and he will suffer irreparable harm if Defendants proceed with their Internal Affairs interview wherein they are permitted to question him about his sexual conduct. Moreover, the Plaintiff Trooper's right to privacy is a constitutional right which cannot be adequately satisfied by way of monetary compensation.

Second, Defendants will suffer no harm from the preliminary injunction. At most, Defendants will be prohibited from conducting an investigation into the consensual, off-duty sexual conduct of one of its employees for a brief period of time while the Court determines, by way of a final injunction, the constitutional implications of their investigation.

Third, Plaintiffs satisfy the public interest requirement for preliminary injunctive relief. Where there are no societal benefits justifying Defendants' violation of Plaintiff's right to privacy, the public interest clearly favors the protection of constitutional rights. See generally Tenafly Eruv Ass'n, Inc. v.

Borough of Tenafly, 309 F. 3d 144, 178 (3d Cir. 2002).

For the foregoing reasons, Plaintiffs are entitled to preliminary injunctive relief prohibiting Defendants from questioning or disciplining Plaintiff regarding his sexual activities until further Order of the Court.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Application for Preliminary Injunctive Relief and prohibit Defendants, until further Order of the Court, from (a) questioning the Plaintiff Trooper regarding his sexual activities, (b) disciplining him for his sexual activities, or (c) disciplining him for failing to answer questions regarding same.

Respectfully submitted,

By: _Charles J. Sciarra /s/_
Charles J. Sciarra, Esq.
**Sciarra & Catrambone, L.L.C.**
1130 Clifton Avenue, Suite #3
Clifton, New Jersey 07013
Phone: (973) 242-2442
Fax:   (973) 242-3118
Email: csciarra@sciarralaw.com

By: _Matthew R. Curran /s/_
Matthew R. Curran, Esq.
**Sciarra & Catrambone, L.L.C.**
1130 Clifton Avenue, Suite #3
Clifton, New Jersey 07013
Phone: (973) 242-2442
Fax:   (973) 242-3118
Email: curranml@sciarralaw.com