**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STATE TROOPER FRATERNAL ASSOCIATION, et al., | : : : : CIVIL ACTION NO. 08-3820 (MLC) |
| Plaintiffs, | : : |
| v. | : **MEMORANDUM OPINION** |
| STATE OF NEW JERSEY, et al., | : : : |
| Defendants. | : : |

**COOPER, District Judge**

Plaintiffs, State Trooper Fraternal Association and One New Jersey State Police Trooper, whose identity has been withheld, ("Plaintiff Trooper"), commenced this action against the State of New Jersey, Division of State Police, and Superintendent of the State Police, in his official capacity only (collectively, "defendants"). (Dkt. entry no. 1, Compl., at 3.) Plaintiffs allege, <u>inter alia</u>, that defendants' questioning of Plaintiff Trooper in an administrative interview about his conduct, including sexual conduct, on or about December 6 and 7, 2007 will violate his constitutional right to privacy. (<u>Id.</u> at 5-6.) On the same date plaintiffs filed the complaint, they also submitted a proposed Order for Preliminary Injunctive Relief requesting that the Court enjoin defendants from (1) questioning Plaintiff Trooper about his sexual activities, (2) disciplining Plaintiff Trooper for his sexual activities, or (3) disciplining Plaintiff Trooper for refusing to answer questions about his sexual

activities.  (Dkt. entry no. 1, Proposed Order for Prelim. Relief.)

This Court issued a Temporary Restraining Order on July 31, 2008, and ordered defendants to show cause why an order for a preliminary injunction should not be entered.  (Dkt. entry no. 2, 7-31-08 TRO & Order to Show Cause.)  Thereafter, five additional New Jersey State Police Troopers, identities withheld, separately moved to intervene and for injunctive relief.  (Dkt. entry no. 5, Unnamed Trooper #2 Mot. to Intervene; dkt. entry no. 13, Unnamed Trooper #3 Mot. to Intervene; dkt. entry no. 10, Unnamed Trooper #4 Mot. to Intervene; dkt. entry no. 8, Unnamed Trooper #5 Mot. to Intervene; dkt. entry no. 20, Unnamed Trooper #6 Mot. to Intervene.)  On August 11, 2008, the Court granted the five separate motions to intervene.  (Dkt. entry no. 26.)  The Court also issued a Temporary Restraining Order and Order to Show Cause enjoining defendants from questioning, disciplining, or taking adverse action against the intervening troopers in connection with the events of December 6 and 7, 2007.  (Dkt. entry no. 25, 8-11-08 TRO & Order to Show Cause.)

The Court has considered the papers submitted by the parties and heard oral argument on August 14, 2008.  Accordingly, the Court hereby issues its findings of fact and conclusions of law in connection with plaintiffs' application for a preliminary injunction, as is required by Federal Rule of Civil Procedure

52.[1]  For the reasons stated herein, the Court will deny plaintiffs' application for a preliminary injunction.

## BACKGROUND AND FACTUAL FINDINGS

### I. New Jersey State Police Administrative Investigation Procedures

The Division of State Police established the Office of Professional Standards ("OPS") "to maintain the integrity and high ethical standards of state troopers."  (Dkt. entry no. 14, Defs. Br., Aff. Capt. Richard E. Necelis, at ¶ 2.)  OPS investigates allegations of misconduct, including those made by private citizens, lodged against individual state troopers.  (Id.)  OPS also conducts administrative investigations when a criminal investigation of a state trooper is closed without criminal prosecution and when a criminal complaint against a state trooper is dismissed.  (Id. at ¶ 3.)

The purpose of an OPS administrative investigation "is to determine whether a state trooper has violated a rule or regulation established by the Division [of State Police] for the discipline and control of the force."  (Id. at ¶ 4.)  Conducting interviews of the involved state troopers is one investigative technique used during an administrative investigation.  (Id.)

---

[1]  "Plaintiffs" will be used to refer collectively to all plaintiffs in this action.  "Plaintiff Troopers" will be used to refer collectively to the six unnamed New Jersey State Police Troopers.

3

There are four ways in which an administrative investigation is resolved. (Id. at ¶ 5.) A complaint is substantiated where "a preponderance of the evidence shows that a trooper violated a rule or regulation." (Id.) A complaint is closed as unfounded where the investigation reveals that the alleged incident did not happen. (Id.) The trooper is exonerated where a preponderance of the evidence demonstrates that the alleged incident occurred, but the trooper did not violate a rule or regulation. (Id.) Finally, an investigation is closed for insufficient evidence where the evidence is insufficient to determine that the trooper violated a rule or regulation. (Id.)

An OPS administrative investigation is different than a criminal prosecution. (See id. at ¶ 4-5.) A decision not to file criminal charges against a state trooper does not prevent OPS from conducting an administrative investigation. (See id. at ¶ 3.)

## II. Events Preceding Commencement of this Action

The Ewing Township Police Department received a report on December 7, 2007 that a twenty-five year old female college student ("complainant") had been sexually assaulted by several men on December 6 and 7, 2007. (Defs. Br., at 8.) After the alleged assault, the complainant sought treatment at a hospital, where she reported the incident. (Id.) The complainant stated that she had gone to a nightclub in Trenton where she met several

4

men.  (Id.)  The complainant consumed alcoholic beverages at various times during the night.  (Id.)  Later in the evening, the complainant went with the men to a private residence in Ewing Township, where she was allegedly sexually assaulted.  (Id.)  One of the Plaintiff Troopers owned the private residence where the alleged sexual assault occurred.  (Dkt. entry no. 32, 8-14-08 Hr'g Tr., at 27, 36.)  Furthermore, the complainant believed that one or more of her attackers were off-duty members of the New Jersey State Police.  (Defs. Br., at 8.)  All six Plaintiff Troopers were present at the residence on the night of the alleged sexual assault.  (Dkt. entry no. 27, Pls. Reply Br., Certification of David Jones, at ¶ 16.)  As a result of the complainant's allegations, Plaintiff Troopers were suspended with pay.  (Defs. Br., at 8.)

The Ewing Township Police Department conducted a preliminary investigation into the complainant's allegations, and then referred the matter to the Mercer County Prosecutor's Office. (Id. at 9.)  The Mercer County Prosecutor's Office initiated its investigation on December 10, 2007.  (Id.)  The Attorney General then re-assigned the matter to the Middlesex County Prosecutor's Office on December 20, 2007.  (Compl., at 4, Ex. C.)  Over the next several months, the Middlesex County Prosecutor's Office conducted an investigation into the complainant's allegations. (See id.)  On July 17, 2008, the Middlesex County Prosecutor's

5

Office closed its investigation without filing criminal charges. (Id.)

The Middlesex County Prosecutor's Office, after closing its investigation, sent its file on the matter to the Attorney General's Office.  (8-14-08 Hr'g Tr., at 61.)  The Attorney General's Office then contacted OPS and instructed it to begin an administrative investigation of the matter.  (Id.)

OPS commenced an administrative investigation into the complainant's allegations of sexual assault.  (Defs. Br., at 3.) The OPS investigation's goal is to determine if Plaintiff Troopers violated any rules or regulations, including whether any Plaintiff Troopers engaged in sexual misconduct.  (See 8-14-08 Hr'g Tr., at 47, 52-53.)  Based upon belief that Plaintiff Troopers might have information about the incident, OPS sought to interview them.  (Defs. Br., at 3.)  OPS informed Plaintiff Troopers by letter dated July 29, 2008 that they would be interviewed about "their conduct on or about December 6 and 7, 2007." (Compl., Ex. D.)  The July 29, 2008 letter stated that if Plaintiff Troopers failed to answer questions during the interview, they would be subject to discipline, including termination.  (Id.)  In a letter dated August 1, 2008, OPS elaborated on the subject matter of the interviews, specifically stating that Plaintiff Troopers would be questioned concerning (1) "their conduct on or about December 6 and 7, 2007," (2)

6

"sexual conduct including whether the conduct was consensual and the result of such conduct," and (3) "various items of physical evidence." (Pls. Reply Br., Ex. C.)

Plaintiff Troopers are willing to participate in the administrative interviews and to answer some questions regarding their conduct on December 6 and 7, 2007. (See 8-14-08 Hr'g Tr., at 30, 39.) Plaintiff Troopers are willing to answer questions pertaining to their consumption of alcohol, the length of their presence at the private residence, and whether they engaged in non-consensual sexual activity. (Id. at 30-31.) However, Plaintiff Troopers will not answer questions concerning any consensual sexual activity that may have occurred. (Id. at 31.)

Plaintiffs obtained Temporary Restraining Orders, which prohibit defendants from questioning or disciplining Plaintiff Troopers in connection with the December 6 and 7, 2007 incident. (7-31-08 TRO & Order to Show Cause; 8-11-08 TRO & Order to Show Cause.) Plaintiffs now seek a preliminary injunction enjoining defendants from (1) questioning Plaintiff Troopers about their sexual activities, (2) disciplining Plaintiff Troopers for their sexual activities, and (3) disciplining Plaintiff Troopers for refusing to answer questions about their sexual activities. (Pls. Reply Br., at 16.)

7

**CONCLUSIONS OF LAW**

Defendants argue that plaintiffs are not entitled to the extraordinary remedy of a preliminary injunction because plaintiffs have failed to establish that (1) they are likely to succeed on the merits, (2) they will be irreparably harmed if a preliminary injunction is not granted, (3) a preliminary injunction would not harm defendants, and (4) a preliminary injunction is in the public interest. (Defs. Br., at 1.) Plaintiffs contend that each of the four factors weighs in favor of injunctive relief. (Dkt. entry no. 1, Pls. Br., at 3.) The Court finds that plaintiffs have not satisfied the elements of a preliminary injunction, and thus, the Court will deny the orders to show cause. The findings and conclusions set forth in this opinion are preliminary only, based upon the state of the record at this stage in the litigation. See Fed.R.Civ.P. 65(a). The parties have preserved all rights to present their disputes to a fact-finder if the action proceeds in this Court.

**I.   Legal Standards Governing Preliminary Injunctions**

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted). To obtain such interim relief, a movant must demonstrate both a likelihood of success on the merits and the probability of

irreparable harm absent the injunction.  Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). Thus, in determining whether to issue a preliminary injunction, the Court must consider whether (1) the movant has shown a reasonable probability of success on the merits, (2) the movant will be irreparably injured by denial of the relief, (3) granting the preliminary relief will result in even greater harm to the nonmoving party, and (4) granting the preliminary relief is in the public interest.  ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996); AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994); see The Nutrasweet Co. v. Vit-Mar Enter., Inc., 176 F.3d 151, 153 (3d Cir. 1999).  The Court should issue an injunction "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief."  AT&T Co., 42 F.3d at 1427 (citation omitted); see The Nutrasweet Co., 176 F.3d at 153 (noting that a plaintiff's failure to establish any one of the four elements renders a preliminary injunction inappropriate).

**A.   Reasonable Probability of Success on the Merits**

The party seeking a preliminary injunction must demonstrate a "reasonable probability of eventual success in the litigation." Bennington Foods LLC v. St. Croix Renaissance, Group, LLP, 528 F.3d 176, 179 (3d Cir. 2008).  In evaluating whether a movant has

9

satisfied this first part of the preliminary injunction standard, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975).

### B.   Irreparable Injury

"In general, to show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.  Economic loss does not constitute irreparable harm." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) (citations and quotations omitted). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will."  Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 726 (3d Cir. 2004) (quotation and citation omitted).  Further, irreparable harm must be of a peculiar nature and must be incapable of pecuniary measurement. See id. at 727; Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91-92 (3d Cir. 1992).

### C.   Harm to Nonmoving Party

The Court must also analyze whether the defendant will suffer irreparable harm if the preliminary injunction is granted. Kos Pharms., Inc., 369 F.3d at 727.  If the Court finds that such temporary relief may irreparably harm the defendant, then it must

10

"balance the hardships" to ensure that the injunction does not harm the defendant more than denial of the injunction would harm the plaintiff.  Id.; see also Constr. Drilling, Inc. v. Chusid, 63 F.Supp.2d 509, 513 (D.N.J. 1999) (stating that courts must "balance the hardships to the respective parties" in determining whether to issue a preliminary injunction).  The "injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."  Kos Pharms., Inc., 369 F.3d at 728 (citation and quotations omitted).  Further, "[i]rreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it."  Id. at 727 (quotation and citation omitted).  Thus, the Court should not consider financial damages when deciding whether to grant an injunction.  Id. at 728.

    **D.**   **The Public Interest**

The public interest will almost always favor the plaintiff, if the plaintiff demonstrates both a likelihood of success on the merits and irreparable injury.  AT&T Co., 42 F.3d at 1427 n.8.

**II. Legal Standards Governing the Right to Privacy**

The United States Constitution protects an individual's right to privacy.  Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia, 812 F.2d 105, 109 (3d Cir. 1987).  The right to privacy includes an individual's private consensual sexual activities.  See Shuman v. City of Philadelphia, 470 F.Supp. 449,

11

459 (E.D. Pa. 1979) ("[A] party's private sexual activities are within the 'zone of privacy' protected from unwarranted governmental intrusion."). However, the protection provided by the right to privacy is not absolute, and may be overcome in certain situations. Id. The right to privacy does not protect non-consensual sexual conduct. See Lawrence v. Texas, 539 U.S. 558, 578 (2003) (emphasizing that the protected sexual conduct involved "full and mutual consent" from both parties and did not involve "persons who might be injured or coerced"). Thus, an individual does not have a right to privacy in non-consensual sexual conduct. See id.

Members of a police department generally have a lesser expectation of privacy than do other employees. Cf. Policemen's Benv. Ass'n of N.J., Local 318 v. Twp. of Washington, 850 F.2d 133, 135, 141 (3d Cir. 1988) (recognizing that increased regulation of a profession, such as the police profession, decreases that profession's justifiable expectation of privacy). The police profession is a "highly regulated" profession. Id. at 141 (stating that "the police industry is probably the most highly regulated"). Heightened and pervasive regulation of the police profession reduces an individual police officer's expectation of privacy. See id. at 135; Fraternal Order of Police, 812 F.2d at 120 (recognizing that "police officers . . .

12

have long been aware that the nature of their work subjects them to inquiry into personal data about their private lives").

This reduced expectation of privacy also applies to a police officer's privacy rights in sexual conduct.  See Shuman, 470 F.Supp. at 459.  A police department "may legitimately investigate some areas of personal, sexual activities engaged in by its employees where those activities impact upon job performance."  Id.  Thus, when a police officer's private sexual conduct adversely affects job performance, a police department may investigate and regulate that conduct.  See id. at 459-60 (recognizing difference between investigation of an employee's act and dismissal for that act, and determining that matters into which an employer may investigate are broader than matters for which an employee may be dismissed).

### III. Legal Standards Applied Here

#### A. Reasonable Probability of Success on the Merits

Defendants argue that plaintiffs have not established a reasonable probability of success on the merits.  (Defs. Br., at 13.)  Defendants assert that plaintiffs' success on the merits is unlikely because the right to privacy does not protect "a state trooper from an administrative investigation into alleged sexual misconduct."  (Id. at 20.)  Plaintiffs argue that the right to privacy protects Plaintiff Troopers from having to answer questions concerning their private, consensual sexual activity.

13

(Pls. Br., at 4.)  Plaintiffs characterize the sexual activity at issue as consensual.  (Pls. Reply Br., at 2.)  Plaintiffs also argue that defendants failed to show that questioning Plaintiff Troopers about their consensual sexual conduct on December 6 and 7, 2007 is substantially related to an important government interest.  (Id. at 1-2.)  The Court finds that plaintiffs have not demonstrated a reasonable probability of success on the merits with respect to their claims.

Plaintiff Troopers allege that compelling them to answer questions regarding their consensual sexual conduct on December 6 and 7, 2007 would violate their constitutional right to privacy. (Compl., at 6.)  However, the consensual nature of the sexual conduct is contested here.  (See 8-14-08 Hr'g Tr., at 51, 53.) The complainant alleges that she was sexually assaulted, but Plaintiff Troopers claim that any sexual activity was consensual. (Id.)  The contested nature of the sexual activity implicates a diminished right to privacy because the right to privacy only protects consensual sexual conduct.  See Lawrence, 539 U.S. at 578 (emphasizing that the protected sexual conduct involved "full and mutual consent" from both parties and did not involve "persons who might be injured or coerced").  Here, the complainant claims to have been assaulted, and she received medical treatment at a hospital after the incident.  (See Defs. Br., at 8.)  Thus, if Plaintiff Troopers have a right to privacy

in this sexual conduct, it is a diminished right to privacy. See Shuman, 470 F.Supp. at 459 (recognizing that the right to privacy is not absolute).

Plaintiff Troopers already have a lesser expectation of privacy than other employees. Cf. Policemen's Benv. Ass'n of N.J., 850 F.2d at 135, 141. Furthermore, the New Jersey Division of State Police regulates its state troopers' off-duty conduct. (Defs. Br., at 5.) One regulation prohibits state troopers from "violat[ing] the laws, statutes or ordinances of . . . any state of the United States." (Defs. Br., N.J. State Police Rules & Regulations, at art. XI, § 4.) This regulation prohibits state troopers from committing sexual assault when off-duty. If Plaintiff Troopers did sexually assault the complainant, then they violated the regulation. But see Shuman, 470 F.Supp. at 454 (stating that conduct for which police officer was investigated did not violate any express police regulations). OPS is charged with investigating whether a state trooper violated a rule or regulation, even when the state trooper has not been charged criminally. (Defs. Br., at 6.) Therefore, OPS's authority includes investigation of an alleged sexual assault committed by state troopers.

Plaintiff Troopers' characterization of the sexual activity as consensual does not bar OPS from investigating the alleged sexual assault. This is not a situation where OPS is

15

investigating Plaintiff Troopers' conduct with a view toward what it considers moral or immoral conduct, nor is OPS conducting a limitless investigation. See Shuman, 470 F.Supp. at 454, 460 (finding the police department's investigative power too broad where "'official investigations' [were] not limited to the kinds of offenses which are grounds for disciplinary action"). Here, OPS's investigation is limited to whether Plaintiff Troopers' conduct violated the rules and regulations governing on-duty and off-duty conduct of state troopers. (See 8-14-08 Hr'g Tr., at 47.) This could include sexual misconduct, failure to give aid to impaired persons, or other acts or omissions violative of state police governing rules. (See id. at 62-64.) OPS also initiated the investigation in response to a specific report of sexual assault made against Plaintiff Troopers, all of whom were present at the private residence when the alleged sexual assault occurred. (See Defs. Br., at 19; Pls. Reply Br., at 5.)

    Allowing Plaintiff Troopers to end OPS's inquiry by characterizing the sexual activity as consensual would obstruct OPS's investigation of an alleged sexual assault committed by one or more Plaintiff Troopers. OPS would be limited in its ability to investigate allegations of sexual assault committed by any state trooper if the state trooper could avoid questioning merely by claiming that the conduct was consensual. Such limits conflict with OPS's obligation to fully investigate complaints of

16

trooper misconduct. (See Defs. Br., at 6; dkt. entry no. 30, Pls. Letter Supplementing R., N.J. State Police Standard Operating Procedure B-10, at 16 ("Investigating allegations of misconduct shall be conducted by the OPS . . . ."); id. at 2 ("It shall be the policy of the Division that all internal affairs investigations are conducted in a thorough manner. This includes the examination of all relevant circumstances and the investigation of relevant conduct.").) Thus, Plaintiff Troopers do not have a right to privacy in sexual conduct that is the subject of a sexual assault allegation currently being investigated by OPS. Here, the complainant alleges that she was sexually assaulted by one or more of Plaintiff Troopers, and OPS is currently investigating that allegation. (Compl., at 3, Ex. A; Defs. Br., at 9.) Thus, Plaintiff Troopers do not have a right to privacy in their sexual conduct of December 6 and 7, 2007.

    Because Plaintiff Troopers do not have a right to privacy in their sexual conduct on December 6 and 7, 2007, or other conduct that may have violated state police rules or regulations, plaintiffs are unable to establish a likelihood of success on the merits of their claims. Plaintiffs failed to establish a likelihood of success on their claims, and therefore they are not entitled to injunctive relief.

17

### B.     Irreparable Harm

Defendants argue that plaintiffs have not established that they will be irreparably harmed without injunctive relief. (Defs. Br., at 21.)  Defendants argue that requiring Plaintiff Troopers to answer questions concerning their sexual conduct on December 6 and 7, 2007 does not violate their constitutional rights.  (Id.)  Furthermore, Defendants assert that even if a constitutional violation occurs, plaintiffs have failed to allege specific facts establishing that irreparable harm will occur without injunctive relief.  (Id. at 22.)  In response, plaintiffs argue that forced disclosure of Plaintiff Troopers' sexual conduct on December 6 and 7, 2007 is a constitutional violation incapable of monetary compensation.  (Pls. Reply Br., at 7-8.) The Court finds that plaintiffs have failed to show that they will be irreparably harmed absent injunctive relief.

Plaintiffs claim that their constitutional right to privacy will be violated if Plaintiff Troopers are forced to answer questions concerning their sexual conduct on December 6 and 7, 2007.  (Id. at 7.)  Plaintiffs assert that this constitutional violation will cause irreparable harm.  (Id.)  However, Plaintiff Troopers do not have a right to privacy in their sexual conduct on December 6 and 7, 2007 because that sexual conduct is the subject of a sexual assault allegation, which OPS is currently investigating.  (Defs. Br., at 3.)  Because Plaintiff Troopers do

18

not have a right to privacy in that sexual conduct, they will not suffer a constitutional violation if questioned about it. Therefore, plaintiffs have failed to establish that they will suffer irreparable harm absent an injunction. Because plaintiffs failed to satisfy the second requirement for a preliminary injunction, they are not entitled to injunctive relief.

It is unnecessary for the Court to address the last two factors in the injunctive relief analysis - whether granting injunctive relief (1) will cause even greater harm to the nonmoving party, and (2) be in the public interest. To obtain injunctive relief, the moving party must show that all four factors favor injunctive relief. AT&T Co., 42 F.3d at 1427. Failure by the moving party to establish any one of the factors renders injunctive relief improper. See The Nutrasweet Co., 176 F.3d at 153. Here, plaintiffs were unable to establish both a likelihood of success on the merits and irreparable harm without an injunction. Thus, even if plaintiffs show that the final two factors favor injunctive relief, such relief is inappropriate because of plaintiffs' failure to show that all four factors favor injunctive relief.

**CONCLUSION**

The Court, for the reasons stated supra, will deny plaintiffs' application for a preliminary injunction.  The Court will issue an appropriate order.

                                                s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge

Dated: September 23, 2008