**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
STATE TROOPER FRATERNAL             :
ASSOCIATION, et al.,                :
                                    :  CIVIL ACTION NO. 08-3820 (MLC)
      Plaintiffs,                   :
                                    :
      v.                            :        MEMORANDUM OPINION
                                    :
STATE OF NEW JERSEY, et al.,        :
                                    :
      Defendants.                   :
                                    :
```

**COOPER, District Judge**

Plaintiffs, State Trooper Fraternal Association and Seven New Jersey State Police Troopers, whose identities have been withheld ("Plaintiff Troopers" or collectively, "plaintiffs"), commenced this action against the State of New Jersey, Division of State Police, and the Superintendent of the Division of State Police, in his official capacity only (collectively, "defendants"). (Dkt. entry no. 1, Compl.; dkt. entry no. 37, Am. Compl.) Upon the motion of the plaintiffs, the Court ordered the defendants to show cause why they should not be ordered to dismiss certain disciplinary charges pending against the plaintiffs, or, in the alternative, why the defendants should not be preliminarily enjoined from engaging in a reenlistment decision as to Plaintiff Troopers #1 and #7. (Dkt. entry no. 47, Pls.' Motion for Order to Show Cause; dkt. entry no. 48, 10-21-09 Order to Show Cause.)

The Court, observing that the parties had addressed the issue in briefing the Order to Show Cause entered on October 21, 2009, ordered the parties to show cause on November 12, 2009, why the action should not be stayed while the state disciplinary proceedings are pending pursuant to the abstention doctrine enunciated in Younger v. Harris, 401 U.S. 37, 43-54 (1971). (Dkt. entry no. 67, 11-12-09 Order to Show Cause.)  The parties submitted supplemental briefs addressing the issue of Younger abstention.  (Dkt. entry no. 70, Pls.' Supp'l Br.; dkt. entry no. 71, Defs.' Resp. Br.)

The Court has considered the papers submitted by the parties and heard oral argument on December 3, 2009.  The Court finds it appropriate to stay and administratively terminate the action on the grounds of Younger abstention.  The Court, even if reaching the merits of the plaintiffs' application for a preliminary injunction, would find that the requested relief is not warranted.

**BACKGROUND**

I.   **Events of December 6 and 7, 2007**

The events at issue in this case remain in dispute.  The factual background is set forth more fully in the Court's September 23, 2008 Memorandum Opinion.  (Dkt. entry no. 33, 9-23-08 Mem. Op. at 3-7.)  A twenty-five year old college student (the "Student") reported to police on December 7, 2007, that she had

2

been sexually assaulted by several men she believed to be off-duty state troopers at the residence of one of the Plaintiff Troopers (the "incident").  (<u>See</u> dkt. entry no. 16, Necelis Aff. at ¶ 7.)  The Plaintiff Troopers collectively concede to having what they characterize as consensual sexual relations with the Student.  (<u>See, e.g.</u>, dkt. entry no. 61, Pls.' Br. Supp. Order to Show Cause at 2 (characterizing subject of internal investigation as "private, consensual conduct amongst eight consenting adults").)  All seven Plaintiff Troopers were suspended with pay as of December 11, 2007.

## II.  Prior Proceedings in This Court

The plaintiffs commenced this action on July 31, 2008, at which time they sought to enjoin the New Jersey Division of State Police's Office of Professional Standards ("OPS") from questioning the Plaintiff Troopers about events occurring on the evening of December 6 and early morning hours of December 7, 2007, on the basis that such questioning would violate their constitutional right to privacy.  (Dkt. entry no. 1, Pls.' Br. Supp. App. for Prel. Inj. Relief.)[1]  The Court granted the plaintiffs a temporary restraining order ("TRO") restraining the

---

[1] At the time the original Complaint and application for preliminary injunctive relief were filed, only a single Plaintiff Trooper was a party to this case.  The remaining Plaintiff Troopers intervened during the pendency of that motion and were parties to it, except for Trooper #7, who had already submitted to questioning.  (9-23-08 Mem. Op. at 2.)

defendants from questioning the Plaintiff Troopers or disciplining or taking any adverse action against them in connection with the investigation of the incident.  (Dkt. entry no. 2, 7-31-08 TRO; dkt. entry no. 25, 8-11-08 TRO.)

In a Memorandum Opinion and an Order dated September 23, 2008, the Court dissolved the temporary restraints and denied the plaintiffs' application for a preliminary injunction, concluding that the "Plaintiff Troopers do not have a right to privacy in their sexual conduct on December 6 and 7, 2007, or other conduct that may have violated state police rules or regulations."  (9-23-08 Mem. Op. at 17; dkt. entry no. 34, 9-23-08 Order.)  The OPS then proceeded with its investigation of the incident, including questioning the Plaintiff Troopers about the events in question. (Am. Compl. at ¶ 24.)

The Court issued an Order on June 12, 2009, advising the parties that it would dismiss the action for lack of prosecution unless the plaintiffs took further action before June 26, 2009. (Dkt. entry no. 36, 6-12-09 Order.)  The plaintiffs filed their First Amended Complaint on June 26, 2009.  The plaintiffs sought "declaratory and injunctive relief against Defendants, permanently enjoining and restraining Defendants . . . from taking any action against Plaintiffs in violation of Plaintiffs' rights under constitutional, statutory and common law, including Plaintiffs' right of privacy."  (Am. Compl. at ¶ 2.)

4

The defendants filed a responsive pleading to the Amended Complaint on October 16, 2009.  (Dkt. entry no. 46, Answer.)  The plaintiffs came before this Court on October 17, 2009, again seeking a TRO and an Order to Show Cause why the defendants should not be preliminarily enjoined from taking disciplinary action against the Plaintiff Troopers.  (Dkt. entry no. 47, Pls.' Mot. for Order to Show Cause.)  The parties appeared before the Court on October 21, 2009, at which time the Court denied the plaintiffs' request for a TRO and issued the Order to Show Cause. (Dkt. entry no. 48, 10-21-09 Order to Show Cause; dkt. entry no. 56, 10-21-09 Hr'g Tr.)[2]  The plaintiffs subsequently filed motions for leave to file a second amended complaint (dkt. entry no. 63) and for sanctions against a Deputy Attorney General who has appeared on behalf of the defendants in this case (dkt. entry no. 64).

## III. State Disciplinary and Administrative Proceedings

The Superintendent of the Division of State Police, Col. Joseph Fuentes, sent letters to Troopers #1 and #7 on September 16, 2009, advising these two non-tenured troopers that he was "contemplating not reappointing" them on their upcoming

_____

[2] The plaintiffs also sought leave to file a Second Amended Complaint in their motion for a TRO and Order to Show Cause.  The Court denied the plaintiffs' motion for leave to amend without prejudice, advising the plaintiffs that they could proceed with the motion for leave to amend in a separate application which would proceed before the Magistrate Judge.  (10-21-09 Order to Show Cause at 2.)

reenlistment date of November 18, 2009.  (Dkt. entry no. 47,
Cert. of David Jones ("Jones Cert."), Ex. A.)  The OPS served
General Disciplinary Charges on each of the Plaintiff Troopers on
October 9, 2009.  (Jones Cert., Ex. E.)  The Plaintiff Troopers
are charged with violating the following Rules and Regulations of
the New Jersey State Police:

> <u>Charge #1:</u> Violation of Article VI, Section 2.c., . . .
> which reads:
>> No member shall act or behave in any capacity to
>> the detriment of good order and discipline of the
>> Division.
>
> <u>Charge #2:</u> Violation of Article VI, Section 2.b., . . .
> which reads:
>> No member shall act or behave in an unofficial or
>> private capacity to the personal discredit of the
>> member or to the discredit of the Division.
>
> <u>Charge #3:</u> Violation of Article XIII, Section 17.,
> . . . which reads:
>> No member should knowingly act in any way that
>> might reasonably be expected to create an
>> impression or suspicion among the public having
>> knowledge of such acts that such member may be
>> engaged in conduct violative of trust as a member.

(Jones Cert., Ex. E, 10-9-09 General Disciplinary Charges.)  <u>See</u>
N.J.S.A. § 53:1-10 (granting Superintendent of the Division of
State Police authority to make all rules and regulations for the
discipline and control of state police, subject to the approval
of the governor).  The charges included the following factual
specification:

<u>Specification #1:</u>

On December 7, 2007, after consuming alcohol off-duty, Tpr. [Redacted] exercised poor judgment and displayed conduct unbecoming a sworn member of the Division, specifically by being one of seven enlisted members who engaged in sexual acts with a female college student who had ingested intoxicants.  Tpr. [Redacted] by his actions and judgment, including before and after the incident in question, failed to maintain the high standards of conduct that one must observe while employed as a New Jersey State Trooper.  In addition, Tpr. [Redacted's] actions brought discredit onto the Division and caused the general public to question the Division's ability to effectively and impartially render police services.

(Jones Cert., Ex. E, 10-9-09 General Disciplinary Charges.)  The charges also included an allegation of improperly accepting free admittance into the nightclub where the Plaintiff Troopers met the Student, specifically, avoiding "an $8.00 cover charge after displaying his badge" after the entrance had been closed to the general public, in violation of Article XIII, Section 18.a., of the Rules and Regulations of the Division.  (<u>Id.</u>)  That regulation prohibits troopers from accepting "any gift, reward, gratuity, loan, fee or any other thing of value arising from or offered because of the member's employment or the performance of duty."  (<u>Id.</u>)  The Plaintiff Troopers each contested the charges in their entirety.  (Dkt. entry no. 58, Cert. of Victor DiFrancesco, Jr. ("DiFrancesco Cert.") at ¶ 12 & Ex. A.)

Major Patrick Caughey of the OPS advised the attorney representing Plaintiff Trooper #1 on October 13, 2009, that the

7

Superintendent intended to suspend the Plaintiff Troopers without pay, effective October 14, 2009.  (Jones Cert., Ex. F.)  Maj. Caughey further advised that the Troopers could contest the Superintendent's decision to deprive them of pay by requesting a hearing before the OPS.  (Id.)  The Plaintiff Troopers did request such a hearing, pursuant to Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).  The Loudermill hearings occurred on October 15 and 16, 2009.  At the conclusion of the Loudermill hearings, the presiding officer found the charges and supporting information sufficiently serious to warrant suspension without pay.  (DiFrancesco Cert. at ¶ 11.)  The OPS then transmitted the matter to the Office of Administrative Law ("OAL") on October 22, 2009, for a plenary hearing on the disciplinary charges.  (DiFrancesco Cert. at ¶ 13 & Ex. B.)  The matter is currently pending before an administrative law judge ("ALJ") in the OAL.  In the Matter of Seven State Troopers, OAL Dkt. No. POL 10456-09, Agency Dkt. No. 2007-1024.  (See dkt. entry no. 61, Supp'l Jones Cert., Ex. I, 11-9-09 Letter from ALJ to Plaintiff Troopers' counsel advising of thirteen possible hearing dates in November and December 2009; id., Ex. J, 11-5-09 Interlocutory Order denying Plaintiff Troopers' request to continue sealing order.)

In opposing the plaintiffs' instant application for a preliminary injunction in this Court, the defendants raised the

issue of <u>Younger</u> abstention, based on the pendency of the disciplinary proceedings before the ALJ.  (Dkt. entry no. 58, Defs.' Opp'n Br. at 23-26.)  The plaintiffs argue that <u>Younger</u> abstention is inappropriate.  (Dkt. entry no. 59, Pls.' Reply Br. at 24-28.)

## APPLICABLE LEGAL STANDARDS

### I.   Legal Standards Governing <u>Younger</u> Abstention

<u>Younger</u> and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982).  <u>Younger</u> abstention is rooted in principles of federalism and comity for state courts.  <u>Younger</u>, 401 U.S. at 44 (discussing "Our Federalism" as a concept representing "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.").  Additionally, according to the "basic doctrine of equity jurisprudence . . . courts of equity should not act . . . when the moving party has an adequate remedy at law" in a state court proceeding.  <u>Id.</u> at 43.

A district court therefore should abstain from exercising jurisdiction in an action if there are (1) state proceedings that are related and pending, (2) important state interests implicated therein, and (3) adequate opportunities to raise federal claims therein.  Middlesex County Ethics Comm., 457 U.S. at 435; Younger, 401 U.S. at 43-54.  However, Younger abstention is inappropriate, even if the foregoing three prongs are met, if the plaintiff establishes bad faith, harassment, or some other "extraordinary circumstance[]  . . . such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted."  Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989).

## II.  Legal Standards Governing Preliminary Injunctions

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances."  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted).  To obtain such interim relief, a movant must demonstrate both a likelihood of success on the merits and the probability of irreparable harm absent the injunction.  Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988).  Thus, in determining whether to issue a preliminary injunction, the Court must consider whether (1) the movant has shown a reasonable probability of success on the merits, (2) the movant

will be irreparably injured by denial of the relief, (3) granting
the preliminary relief will result in even greater harm to the
nonmoving party, and (4) granting the preliminary relief is in
the public interest.  ACLU of N.J. v. Black Horse Pike Reg'l Bd.
of Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996); AT&T Co. v.
Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir.
1994); see The Nutrasweet Co. v. Vit-Mar Enter., Inc., 176 F.3d
151, 153 (3d Cir. 1999).  The Court should issue an injunction
"only if the plaintiff produces evidence sufficient to convince
the district court that all four factors favor preliminary
relief."  AT&T Co., 42 F.3d at 1427 (citation omitted); see The
Nutrasweet Co., 176 F.3d at 153 (noting that a plaintiff's
failure to establish any one of the four elements renders a
preliminary injunction inappropriate).

## LEGAL STANDARDS APPLIED HERE

I.   **Younger Abstention**

    A.   **Pending State Judicial Proceeding**

For a court to abstain on Younger grounds, there must be a
pending state judicial proceeding.  See Steffel v. Thompson, 415
U.S. 452, 462 (1974) ("When no state proceeding is pending . . .
considerations of equity, comity, and federalism have little
vitality.").  The Younger abstention doctrine applies to both
state criminal and non-criminal proceedings.  See Middlesex
County Ethics Comm., 457 U.S. at 432 ("The policies underlying

_Younger_ are fully applicable to noncriminal judicial proceedings when important state interests are involved."); _Juidice v. Vail_, 430 U.S. 327, 335-36 (1977) (noting that the salient fact for abstention purposes is whether "federal-court interference would unduly interfere with the legitimate activities of the state," rather than the label of the state proceeding as civil, quasi-criminal, or criminal in nature).

State administrative proceedings may satisfy the requirements for _Younger_ abstention.  _Zahl v. Harper_, 282 F.3d 204, 209 (3d Cir. 2002) (finding "an administrative proceeding conducted pursuant to New Jersey's regulatory structure" to constitute a pending state judicial proceeding); _see also_ _Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc._, 477 U.S. 619, 627 n.2 (1986).  Here, the Plaintiff Troopers are currently in the midst of a pending administrative proceeding before an ALJ in the OAL.  New Jersey's Administrative Procedure Act governs that proceeding.  N.J.S.A. § 52:14B-1 _et_ _seq._  The Plaintiff Troopers have the right to appeal the final decision of the applicable agency head (here, the Superintendent of the Division of State Police) to the New Jersey Superior Court, Appellate Division.  N.J.Ct.R. 2:2-3(a)(2).  Accordingly, the Court finds that the first prong for applying _Younger_ abstention is present here.  _See_ _Zahl_, 282 F.3d at 209 ("Only proceedings that fail to rise to the

level of 'adjudication' are considered inadequate for purposes of abstention.") (internal quotation and citation omitted).

The plaintiffs contend that the defendants have waived their _Younger_ argument by submitting to the earlier proceedings in this Court or failing to raise their _Younger_ argument in answering the Amended Complaint. (Pls.' Supp'l Br. at 2, 12-13.)  In a related argument, they contend that the Court should not abstain because the state proceedings commenced in the OAL after they brought this federal action.  (_Id._ at 2-3.)

Neither argument persuades.  First, the Court declines to find that the defendants waived their _Younger_ argument by not raising it at an earlier stage in this litigation.  _See O'Neill v. City of Phila._, 32 F.3d 785, 786 n.1 (3d Cir. 1994) (noting that courts may consider the question of _Younger_ abstention even when not raised by the parties).  The plaintiffs' previous application for a preliminary injunction, denied by this Court, concerned the ability of the OPS to question the Plaintiff Troopers about the incident.  The earlier proceedings in this Court did not implicate _Younger_ considerations because those proceedings did not include an opportunity for the development of a factual record or an adjudication on the merits of the Plaintiff Troopers' constitutional claims.  _See Ohio Civil Rights Comm'n_, 477 U.S. at 626 (rejecting contention that party had waived abstention argument by stipulating that the district court

had jurisdiction over the action).  (See also dkt. entry no. 32,
8-14-08 Hr'g Tr. at 10:13-20 (exchange between the Court and
counsel for Plaintiff Trooper #1 establishing that OPS
investigation was current state of proceedings and, while "not
framed as a disciplinary proceeding," it "could somehow become a
disciplinary proceeding").)

For this reason, the plaintiffs' argument that the Court
should not apply Younger abstention because the plaintiffs
brought this action prior to the institution of state
administrative proceedings in the OAL fails.  Where state
proceedings begin after the federal complaint is filed, "but
before any proceedings of substance on the merits have taken
place in federal court, the principles of Younger v. Harris
should apply in full force."  Middlesex County Ethics Comm., 457
U.S. at 436-37 (citing Hicks v. Miranda, 422 U.S. 332, 349
(1975)).  Although the plaintiffs brought this federal action
prior to commencement of the proceedings in the OAL, this case
lay dormant since the Court denied the plaintiffs' initial
application for a preliminary injunction.  Service of the
disciplinary charges, and the Loudermill hearings on the OPS's
intention to change the Plaintiff Troopers' suspension from
suspension with pay to suspension without pay, at which point the
state proceedings could be characterized as "judicial," occurred
prior to the plaintiffs' current application for injunctive

14

relief in this Court.  Inasmuch as the Plaintiff Troopers seek injunctive relief in this Court rather than presenting their constitutional claims in the state administrative proceeding, the competing state court proceeding is "pending" for Younger purposes.  See O'Neill, 32 F.3d at 790.

The plaintiffs also contend that "there is a substantial question regarding whether Trooper #'s 1 and 7 are now a part of the administrative proceedings before" the ALJ.  (Defs.' Supp'l Br. at 3.)  The plaintiffs complain that these non-tenured troopers' reenlistment date has passed without any notice from the defendants as to whether they have been fired or reenlisted.  However, the plaintiffs also assert that the typical practice is that if the reenlistment date passes with no notification or formal action, the trooper is automatically reenlisted and becomes effectively tenured.  (Id. at 4; dkt. entry no. 70, 2d Supp'l Jones Cert. at ¶ 41.)  No evidence before the Court indicates that the administrative proceedings instituted on October 9, 2009, are no longer proceeding against either Trooper #1 or Trooper #7 or that those troopers are being treated differently in the OAL due to their uncertain tenure status.  The Court further sees no evidence of bad faith on the part of the defendants nor any intention of "depriv[ing Trooper #1 and Trooper #7] of judicial review of their constitutional claims." (Defs.' Supp'l Br. at 5 n.1.)  Because there are ongoing state

administrative proceedings involving each of the seven Plaintiff Troopers, the Court finds the first <u>Younger</u> prong satisfied.

**B.    Important State Interests Implicated by State Proceeding**

The second <u>Younger</u> prong considers whether "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 11 (1987).

At issue here is the state's interest in regulating the conduct of its police officers.  The state has a legitimate interest in preserving confidence in its police force.  <u>State Troopers Non-Commissioned Officers Ass'n v. New Jersey</u>, 643 F.Supp.2d 615, 638 (D.N.J. 2009); <u>see also</u> <u>Terry v. Town of Morristown</u>, No. 06-1788, 2007 WL 2085351, at *4 (D.N.J. July 17, 2007) ("The State of New Jersey has a significant interest in maintaining and assuring the professional conduct of its police force.") (internal quotation and citation omitted).

The state legislature delegated authority to the Superintendent to promulgate rules governing the conduct of the state police to achieve the legitimate goal of ensuring the integrity of and public confidence in the state police force. <u>See</u> N.J.S.A. § 53:1-10.  "Consequently, the superintendent has the ultimate responsibility for maintaining discipline among state police officers."  <u>In re Carberry</u>, 556 A.2d 314, 316 (N.J.

16

1989).  The discipline of state troopers "involves the most profound and fundamental exercise of managerial prerogative and policy," implicating "not only the proper conduct of those engaged in the most significant aspects of law enforcement, involving the public safety and the apprehension of dangerous criminals, but also the overall effectiveness, performance standards, and morale of the State Police."  New Jersey v. State Troopers Fraternal Ass'n, 634 A.2d 478, 491 (N.J. 1993) (holding that discipline of state police was not subject to negotiation or collective bargaining agreement).

Enforcement of the Division's Rules and Regulations by means of disciplinary proceedings "fosters departmental morale and discipline and reinforces the objective legitimacy of the Division's role in State government."  Rosko v. Pagano, 466 F.Supp. 1364, 1371 (D.N.J. 1979) (noting that the state's "concern in the effective operation of its premiere law enforcement agency is on the same level" as the interests recognized in earlier Supreme Court cases as warranting abstention).  Thus, the Court finds that the second Younger prong is present here because the state administrative proceedings implicate important state interests in ensuring the professional conduct of the state police force.

## C.    Adequate Opportunity to Raise Constitutional Challenges

The plaintiffs make no valid argument that they will be unable to raise their constitutional privacy rights in the pending state administrative proceedings.  Cf. Ohio Civil Rights Comm'n, 477 U.S. at 629 (noting that party opposing abstention cited no authority that state law providing for judicial review of administrative rulings excludes judicial review of constitutional claims).  Constitutional claims may be raised before an ALJ, who is "clothed with ample authority to rule upon such questions in their initial decisions, to the extent the issues arise legitimately in the context of the contested case hearing and are necessary for a complete disposition of any genuine issue in the contested case."  Jones v. Dep't of Cmty. Affs., 930 A.2d 477, 480 (N.J. App. Div. 2007); see also Rosko, 466 F.Supp. at 1372 n.7.  The record in this case indicates that the ALJ presiding over the Plaintiff Troopers' state administrative proceedings anticipates that the Plaintiff Troopers will raise claims regarding their constitutional privacy rights.  (Supp'l Jones Cert., Ex. J, 11-5-09 ALJ Order at 3.)

The plaintiffs instead contend that they cannot receive a fair and impartial state administrative proceeding untainted by bias.  The Superintendent of the Division of State Police, a defendant in this action, is the agency head responsible for rendering a final decision regarding the disciplinary charges

once the ALJ issues a recommendation under New Jersey's Administrative Procedure Act.  See N.J.S.A. § 52:14B-10(c). (Defs.' Supp'l Br. at 7.)

The plaintiffs' allegation of bias of the Superintendent does not persuade the Court that the plaintiffs are unable to raise their constitutional claims in the state administrative proceeding.  The plaintiffs proffer no specific allegation of bias of the Superintendent, and instead infer bias based on the Superintendent's status as a defendant in this case.  Cf. Rosko, 466 F.Supp. at 1370 (finding that due process required substitution of Attorney General for superintendent as agency head in administrative proceedings, where the superintendent had openly admitted bias on a central element of the plaintiff police officer's defense to the disciplinary hearing).

The plaintiffs erroneously assert that "the Superintendent wields the ultimate power regarding the fate of the Plaintiffs' constitutional claims." (Defs.' Supp'l Br. at 8.)  As an initial matter, the Superintendent's scope of review of the recommendation of the ALJ presiding over the administrative hearings (whom the plaintiffs do not accuse of bias) is circumscribed by statute to findings that are "[a]rbitrary, capricious or unreasonable or . . . not supported by sufficient, competent, and credible evidence in the record." N.J.S.A. § 52:14B-10(c).  Following the Superintendent's final decision, the

19

plaintiffs have a right to appeal to the New Jersey Appellate Division.  N.J.Ct.R. 2:2-3(a); see Zahl, 282 F.3d at 210 (finding third Younger prong satisfied where plaintiff could assert his constitutional claim in state administrative proceeding and take an automatic right of appeal to the Appellate Division, "which is capable of reviewing . . . federal claims").

Following entry of final judgment by the New Jersey Appellate Division, the plaintiffs may seek review of their constitutional claims in the Supreme Court of New Jersey. N.J.Ct.R. 2:2-1.  Ultimately, the plaintiffs could petition the Supreme Court of the United States for a writ of certiorari.  See 28 U.S.C. § 1257(a); Sup.Ct.R. 10, 12-14.

The plaintiffs do not accuse either the ALJ or the New Jersey Appellate Division of bias, and this Court will not presume bias on the part of the entire New Jersey state court system.  In the event that the plaintiffs believe the Superintendent exhibits bias in the proceedings, they may preserve that issue for appeal for review by the New Jersey Appellate Division, which may then remedy the bias as required by the interests of justice.  See Nero v. Bd. of Chosen Freeholders of Camden County, 365 A.2d 479, 320-21 (N.J. App. Div. 1976).

### D.   No Extraordinary Circumstances Exist

Younger abstention is inappropriate, even if the foregoing three prongs are met, if the party opposing abstention

establishes that "extraordinary circumstances exist . . . such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." <u>Schall</u>, 885 F.2d at 106; <u>cf.</u> <u>Perez v. Ledesma</u>, 401 U.S. 82, 85 (1971) ("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate."). Such circumstances must be "'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." <u>Kugler v. Helfant</u>, 421 U.S. 117, 131 (1975).

The plaintiffs accuse the defendants and the Attorney General's office of bad faith in pursuing the state administrative proceedings. (Defs.' Supp'l Br. at 10.) The plaintiffs contend that the defendants have acted in bad faith by first arguing, in opposing the plaintiffs' earlier application for injunctive relief, that consent was a contested issue in its investigation of the incident, and now contending that the issue of consent is irrelevant for the purposes of the disciplinary proceedings. (Defs.' Supp'l Br. at 10-11.) The plaintiffs argue in the alternative that the Court should decline abstention

because the plaintiffs "will suffer irreparable harm if they are forced to defend against the disciplinary charges . . . and thus expose that conduct which is protected by their right to privacy." (Id. at 11.)

The Court finds that the plaintiffs have not established bad faith of the defendants.  In the earlier proceeding in this Court, the defendants argued that the consensual nature of the incident was contested.  (See 9-23-08 Mem. Op. at 14.)  At that point, the defendants had not yet had the benefit of interviewing the Plaintiff Troopers about the events of December 6 and 7, 2007, particularly any non-consensual sexual contact that may have occurred.  The defendants now proffer that the evidence gathered in the course of the OPS investigation demonstrates that

> the Troopers came upon the student, who had consumed alcoholic beverages. . . . Later in the evening, the Student met the Troopers at a private residence . . . owned by one of the Troopers.  The Student had consensual sex with one of the Troopers while at the residence.  Several of the other men, however, then sexually assaulted her.  The Student has repeatedly stated that she did not consent to sex with these other men.  Substantial evidence indicates that the Student was substantially impaired as the result of the ingestion of, among other things, alcoholic beverages.  All seven of the Troopers were present at the residence that night.
>
> . . .
>
> Despite the Plaintiffs' contrary contentions, whether the Troopers' sexual encounters with the Student were consensual remains an issue in the disciplinary proceedings.  Substantial evidence supports a claim

22

> that six of the Troopers had non-consensual sexual
> contact with an impaired person. . . .
>
> Even if the State were unable to prove that the
> Troopers' sexual conduct was non-consensual,
> disciplinary proceedings would still be appropriate.

(Defs.' Reply Br. at 9-10) (emphasis added) (internal citations
omitted).

Regardless of the resolution of the issue of consent, it appears that there is a tenable basis for the institution and prosecution of the disciplinary charges pending in the state administrative hearing.  Those charges do not refer to nonconsensual sexual conduct, but seek to censure the Plaintiff Troopers for acting or behaving "in any capacity to the detriment of good order and discipline of the Division," "to the personal discredit of the member or to the discredit of the Division," and "in [a] way that might reasonably be expected to create an impression or suspicion among the public having knowledge of such acts that such member may be engaged in conduct violative of trust as a member."  (Jones Cert., Ex. E, 10-9-09 General Disciplinary Charges.)  Lack of consent to sexual activity is not an element of any of the disciplinary charges, and based on the facts before the Court and the stage of the proceedings, the Court cannot find that the defendants are "without hope" of substantiating the disciplinary charges.  <u>Perez</u>, 401 U.S. at 85.

As to the plaintiffs' argument that they will suffer irreparable harm to their privacy rights if forced to defend themselves in the state administrative proceeding, the Supreme Court "has repeatedly rejected the argument that a constitutional attack on the state procedures themselves automatically vitiates the adequacy of those procedures" for purposes of Younger abstention.  Ohio Civil Rights Comm'n, 477 U.S. at 628 (internal quotation omitted) (stating that religious school's contention that the investigation in the state proceeding violated its First Amendment rights must accede to the state's legitimate interest in investigating alleged discrimination).

Even balancing the state's interest against the federal constitutional rights asserted by the plaintiffs, the Court still finds that principles of comity render abstention appropriate. The plaintiffs contend that the state has no legitimate interest in regulating state troopers' off-duty, private, consensual sexual conduct.  (See, e.g., Pls.' Supp'l Br. at 7 n.2.)  The defendants respond that a valid basis for the disciplinary charges exists regardless of the consent issue because, even if the Student did consent to the sexual activity that occurred, the fact that the seven Plaintiff Troopers engaged in sexual conduct with an impaired person, serially and at the same time, "reflects poorly on their suitability to be members of the State Police." (Dkt. entry no. 58, Defs.' Opp'n Br. at 3.)  The defendants also

24

challenge the plaintiffs' characterization of the incident as consensual, noting that the investigation at this point indicates that the Student contests consent as to six of the seven Plaintiff Troopers.  (Defs.' Reply Br. at 9-10.)

The plaintiffs maintained at oral argument that the pertinent interest at stake is the privacy interest of the Plaintiff Troopers.  However, members of a police department generally have a lesser expectation of privacy than do other employees.  Cf. Policemen's Benv. Ass'n of N.J., Local 318 v. Twp. of Washington, 850 F.2d 133, 135, 141 (3d Cir. 1988) (recognizing that increased regulation of a profession, such as the police profession, decreases that profession's justifiable expectation of privacy).  The police profession is a "highly regulated" profession.  Id. at 141 (stating that "the police industry is probably the most highly regulated").  Heightened and pervasive regulation of the police profession reduces an individual police officer's expectation of privacy.  See id. at 135; Fraternal Order of Police, Lodge No. 5 v. City of Phila., 812 F.2d 105, 120 (3d Cir. 1987) (recognizing that "police officers . . . have long been aware that the nature of their work subjects them to inquiry into personal data about their private lives").

This reduced expectation of privacy also applies to a police officer's privacy rights in sexual conduct.  Shuman v. City of

25

Phila., 470 F.Supp. 449, 459 (E.D. Pa. 1979).  A police department "may legitimately investigate some areas of personal, sexual activities engaged in by its employees where those activities impact upon job performance."  Id.  Thus, when a police officer's private sexual conduct adversely affects job performance, a police department may investigate and regulate that conduct.  See id. at 459-60.

In addition to the plaintiffs having a reduced right to privacy by virtue of the nature of their employment as New Jersey state troopers, the Court in any event finds little basis for recognizing a privacy right in private sexual conduct as extensive and absolute as that claimed by the plaintiffs.  The Constitution protects "certain intimate human relationships . . . against undue intrusion by the State," but not all relationships.  Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984) (discussing freedom of association under the First Amendment).  The type of intimate associations receiving constitutional protection tend to be "those that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives."  Id. at 619 (internal citations omitted); see also Zablocki v. Redhail, 434 U.S. 374, 384-86 (1978) (discussing personal decisions protected by the right to privacy).  "They are distinguished by such attributes as relative smallness, a high degree of selectivity in

26

decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Roberts, 468 U.S. at 619. The conduct at issue in this case, involving seven men and one woman who met one night at a bar, has little in common with the types of relationships that have been held to merit constitutional protection.

Private decisions to engage in sexual activity, while within a "zone of privacy," are not considered fundamental rights and may be regulated by the state. See Via v. Taylor, 224 F.Supp.2d 753, 761 (D. Del. 2002); see also Seegmiller v. Laverkin City, 528 F.3d 762, 770 (10th Cir. 2008) (holding that police officer reprimanded for having sexual relations with another officer failed to establish violation of right to privacy because she proffered no historical antecedents to show that the conduct was "objectively, deeply rooted in this Nation's history and tradition" (quotation omitted)). In Lawrence v. Texas, 539 U.S. 558 (2003), the Supreme Court recognized a privacy right for two consenting adults to engage in private sexual conduct, "common to a homosexual lifestyle . . . without intervention of the government" under the Due Process Clause. 539 U.S. at 579. Lawrence did not hold that private sexual conduct is a fundamental right. See Seegmiller, 528 F.3d at 771 (collecting cases). In finding that the Texas statute criminalizing sodomy violated the Constitution, the Lawrence Court distinguished

27

certain factual circumstances, several of which are implicated here:  "The present case . . . does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused."  Id.

The Student's intoxicated state, her unfamiliarity with the Plaintiff Troopers, and the sheer numerical disparity between the Student and the Plaintiff Troopers all could have made refusal of consent difficult.  Moreover, the Lawrence Court found that the Texas law at issue in that case furthered no legitimate state interest.  Id.  Here, the state's well-established, legitimate interest in enforcing discipline of its police force so as to maintain its integrity arguably outweighs the privacy interest claimed by the plaintiffs.

The plaintiffs do not argue harassment as a basis for the Court to decline to abstain.  Nor do the plaintiffs contend that the Rules and Regulations of the Division of State Police being enforced in the state administrative proceeding are "flagrantly and patently" unconstitutional.  Younger, 401 U.S. at 53.  The Court thus declines to apply the "extraordinary circumstances" exception to Younger abstention and will abstain.  Rather than dismiss the complaint, however, the Court will stay and administratively terminate this federal action pending resolution of the state administrative proceedings.  Gwynedd Props. v. Lower Gwynedd Twp., 970 F.2d 1195, 1204 & n.14 (3d Cir. 1992).

28

## II.   Preliminary Injunction

Even if the Court were to decline to abstain on <u>Younger</u> grounds, the Court would find that the same considerations supporting <u>Younger</u> abstention also counsel against the plaintiffs' application for a preliminary injunction.

The Court, as noted above, would decline to accept the plaintiffs' broad assertion that they have an absolute privacy right in off-duty, consensual sexual conduct.  The state has a legitimate interest in regulating conduct of its police force that could be perceived as illegal, a breach of the public trust, or even just in extremely poor judgment.  This interest outweighs any reduced right to privacy the Plaintiff Troopers may have. The plaintiffs are unable to establish a likelihood of success on the merits of their claims, and therefore they are not entitled to injunctive relief.

The Court also considered the threat of irreparable harm to the plaintiffs.  The plaintiffs have not established that they "have been threatened with any injury other than that incidental to" the pending state administrative proceedings.  <u>Douglas v. City of Jeannette</u>, 319 U.S. 157, 164 (1943).  Because they are free to raise their constitutional claims in that forum, <u>Younger</u> abstention is appropriate and a preliminary injunction against those proceedings is inappropriate.

The Court further would not find that granting the relief sought by the plaintiffs would be in the public interest.  The public interest favors the state's ability to maintain order and discipline in its police force, and notions of comity in our federal system instruct that where the interest is that of the state, the federal courts should allow controversies implicating the state's interest to be adjudicated in the state courts. Because the state's legitimate interest here outweighs the Plaintiff Troopers' reduced expectation of privacy, entry of an injunction would cause the defendants greater harm than non-entry of an injunction would harm the plaintiffs.  Accordingly, the plaintiffs have not established that they are entitled to injunctive relief.  AT&T Co., 42 F.3d at 1427; The Nutrasweet Co., 176 F.3d at 153.

### CONCLUSION

The Court, for the reasons stated supra, will stay these proceedings and administratively terminate the action.  The plaintiffs' motion for a preliminary injunction will be denied. The Court will issue an appropriate order and judgment.


　　　　　　　　　　　　　　　　　    s/ Mary L. Cooper
　　　　　　　　　　　　　　　　　**MARY L. COOPER**
　　　　　　　　　　　　　　　　　United States District Judge

Dated: December 16, 2009

30